(128 So. 215)

## LUNSFORD v. SHANNON.

### 6 Div. 503.

Supreme Court of Alabama.
March 27, 1930.

Rehearing Denied May 15, 1930.

Cabaniss, Johnston, Cocke & Cabaniss and R. B. Evins, all of Birmingham, for appellant.

John H. Bankhead, Jr., of Jasper, and Theodore J. Lamar, of Birmingham, for appellee.

GARDNER, J.

The appeal is from a decree confirming the report of a special master on pleadings seeking a mutual accounting between members of a joint adventure. The history of this joint adventure, and the material substance of the written contract constituting its foundation, are found in the report on the first appeal, and need not be here repeated. Lunsford v. Shannon, 208 Ala. 409, 94 So. 571, 572.

The decree was reversed, following which the bill was amended by bringing in other parties. The decree dismissing the amended bill as to these third parties was reviewed and affirmed in Shannon v. Lunsford et al., 215 Ala. 465, 111 So. 22.

The review by this court was confined solely to this feature of the decree, the court saying: "Upon final decree * * * complainant was denied relief as against the parties added by amendment, and the bill dismissed as to them. The appeal is to review this feature of the final decree." No part of the opinion on the last appeal is of influence

upon any questions here presented. This much is said in answer to suggestion to the contrary in appellee's brief.

■■ In stating the account between appellant and appellee, the special master allowed to appellee interest on the balance found due in his favor dating from October 1, 1916, and aggregating the sum of $9,655.80. The court approved this method of stating the account and overruled appellant's exception filed thereto. This was error. The question was given full consideration by this court in Grand Bay Land Co. v. Simpson, 207 Ala. 303, 92 So. 789, 791, wherein is the following language here pertinent: "In the instant suit the balance for which the aid of a court of equity was invoked could not be known until the respective mutual, unliquidated accounts were canvassed on reference and the rendition of final decree approving such finding of the register. The balance of mutual unliquidated accounts should not bear interest except from the date of the final decree. * * * Appellee's insistence is that interest is statutory and runs upon each item of account from its due date. Code 1907, § 4620. If this rule be applied to mutual, unliquidated accounts, it can only be as to ascertained 'balance' in money that should have been paid. The balance in favor of complainant could not be ascertained before the reference and its confirmation by the court." The foregoing represents the general rule in the absence of some special equity, which does not here obtain. 47 C. J. 1255, § 978; 47 C. J. 1182, § 876; Christian & Craft Gro. Co. v. Hill, 122 Ala. 490, 26 So. 149.

Seeking to avoid the effect of the foregoing authority, appellee suggests the doctrine of subrogation should be influential. There has been no suggestion of this doctrine in the record, and to give such application to the facts here presented would be tantamount to a destruction of the rule stated in the quoted extract from the Grand Bay Land Company Case, supra. The argument is no more an answer in this case than was that seeking to invoke the statute in the Grand Bay Land Company Case. Some reference is made in brief to an offer for the property at one time made by Bessill, which was refused as disclosed by evidence on former appeal, but not here presented, but we consider the insistence wholly lacking in merit, and needs no discussion.

■ Nor has the fact, that the amount due on the mortgage bears interest, any relation to the rule above stated concerning the statement of mutual account.

The authority noted is decisive of this question adversely to appellee's contention, and conclusive of error committed in respect to this interest charge.

■ The question is presented by the fourteenth exception to the report of the special master, and constitutes the fourth assignment of error. No evidence is noted at the foot of the exception, and it may be suggested that, for a failure to comply with rule 93, Chancery Practice, the exception should not be considered. Ex parte Cairns, 209 Ala. 358, 96 So. 246; Curtis v. Curtis, 180 Ala. 70, 60 So. 165; Faulk & Co. v. Hobbie Gro. Co., 178 Ala. 254, 59 So. 450. But this rule is a rule of convenience for the court, and was intended for practical purposes. The error here is one of law and no testimony was necessary to note. It must follow, therefore, that the rule is without application. Such was the holding of this court as to rule 75, Chancery Practice, in the recent case of McCollum v. McCollum, 218 Ala. 500, 119 So. 232, the reasoning there being equally applicable here.

Appellant further insists that the report contains a fundamental error as to the date of the accounting, allowing appellee credit for expenditures after the termination, for all practical purposes, of the joint adventure. In the decree of November 29, 1924, the chancellor expressed the opinion that this dissolution occurred October 1, 1916, but this feature of the decree was not presented or considered by the former appeal of Shannon v. Lunsford, 215 Ala. 465, 111 So. 22, as we have heretofore indicated.

Indeed we apprehend there has been a misconception of the opinion of this court in this respect on first appeal, wherein we referred to the termination of the joint adventure for all practical purposes after notice by the university trustee, and saying that no credits "should be allowed Shannon for expenditures without authority after such practical termination, or beyond a reasonable time to conclude the business of the partnership." Paragraph 2 of opinion of Lunsford v. Shannon, supra.

The contract between these parties, as disclosed upon its face, contemplated mining operations on lands leased from the university. No lands were ever leased and the contemplated corporation was never formed. After repeated notices by the trustees for the university to Shannon (who had sole charge of these operations) that he had no right to mine coal on this property and to desist therefrom, Shannon stopped mining, and no more coal was mined after February, 1916. Appellant's husband, her agent, testifies that he had repeatedly instructed Shannon to incur no further expense until the contemplated lease was secured. The chancellor in his former opinion points out that Shannon as early as September 1, 1916, gave indications of treating the property as his own. As noted in our previous decisions, all the mining operations on this property were those of a trespasser, and nothing whatever had been paid the University. Upon the first appeal this court interpreted the permanent cessation of mining

operations following repeated notices to vacate, as a "practical termination" of the joint adventure, and such was the meaning of the expression found in the second paragraph of the opinion, though not expressed with exactness as the cause was reversed upon other grounds, and consideration was to be given also to the question of "reasonable time to conclude the business of the partnership." This latter question related of course to care of property, concluding the commissary business and matters of that character necessary to a proper termination of the business. The "practical termination" of the joint adventure, therefore, under the opinion of the court on first appeal would date as of March 1, 1916, with reasonable time thereafter to conclude the business as above indicated. Such was the impression made upon the court, and intended to be expressed in the opinion of Lunsford v. Shannon, supra, and such is our conclusion now upon a review and reconsideration of the evidence here presented.

■ Appellee is credited in the report with considerable expenditures subsequent to this date. Indeed the basis for the accounting in this particular is fundamentally erroneous. Rule 93, Chancery Practice, was not observed as to the exceptions interposed and appellee argues they should not be here considered. Whether the rule should be held to embrace so fundamental an error as in the basis for the accounting we need not stop to inquire. We are inclined to the view that the decree is to be interpreted as indicating the confirmation of the report was rested upon a consideration of the merits of the cause, and not upon a failure of observance of the rule. When such is the case this court has seen fit to consider also the question on its merits even to a correction of the decree. Curtis v. Curtis, supra.

■ But the question of the application and effect of rule 93 may be laid aside and left undetermined. Courts are organized for practical purposes in the impartial administration of justice, and, being aware of the fundamental error of the accounting, and having determined error in the first instance as to the interest account, it became the duty of the court to also determine whether or not in its discretion the cause should be reversed and decree rendered eliminating the erroneous interest account, or should be remanded that a proper accounting should be had in accordance with the court's opinion now expressed as well as that entertained on first appeal.

Without regard to any consideration of rule 93 the court is but exercising its plain duty in re-examination of the record with which it is more or less familiar by reason of former appeals, so as to determine upon the proper course that should be here pursued as to the disposition of the cause.

In view of the basic error of accounting herein discussed, we are persuaded the ends of justice require a reversal of the decree and a remandment of the cause for an accounting in accord with the views herein expressed. It is so ordered.

Reversed and remanded.

ANDERSON, C. J., and THOMAS, BOULDIN, and FOSTER, JJ., concur.